NATHANIEL WOOD & another *vs.* OLIVER EDES.

The owner of land through which a stream of water passes may lawfully build and main-
tain upon his own land a dam across the stream, for a fish-pond, although he thereby
prevents the flowing back of water upon his land from the dam of a mill-owner below,
which has not been maintained long enough to give a right by prescription.

If the owner of land through which a stream of water passes has erected upon his own land
a dam across the stream, for a fish-pond, by means of which the flowing back of water
upon his land from the dam of a mill-owner below is prevented, a bill in equity to abate
the upper dam cannot be sustained by the mill-owner, on the ground of an oral license
to him to use the same, in consequence of which he has erected a new mill and fixtures,
which have been rendered worthless by the subsequent refusal and prohibition of the
owner above to allow such use, if it appears that on application by the lower owner, prior
to the erection of his mill, the upper owner expressly refused to sell or let the right to
use his land as a reservoir for a specific time.

BILL IN EQUITY praying for an injunction to restrain the de-
fendant from obstructing, by means of a dam, the natural flow of the water in Little Brook, in Plymouth, and withholding the same from the plaintiffs.

The original and a supplemental bill set forth, amongst other matters which are not now material, that the plaintiff Wood is the owner of a mill and privilege on Little Brook, occupied by the plaintiffs, as partners, for manufacturing tacks and brads; that he erected his mill and dam in 1849, on his own land, and caused the water to flow back upon the Thomas meadow, now owned by the defendant; that in 1850 the defendant erected a dam at the lower end of the meadow, which was for several

years used for the benefit of Wood's factory, the latter having been occupied by Wood and the defendant as partners from 1850 to 1859, under a lease from Wood; that, since the dissolution of the partnership, Wood has used the Thomas meadow for a reservoir, and had possession of the defendant's dam and gate, for a yearly rent; that, in the spring of 1859, Wood obtained from the defendant an express license and consent that, if he erected a new mill, he might continue to flow the meadow and use the dam as he had before done; that, in consequence thereof, he erected a new mill and fixtures at great expense, and the defendant knew that he was so doing, and made no objection and gave no notice of revoking his license until November 9, 1860, when he served upon Wood a written notice that he should not let the water flow back upon the meadow after the 15th of that month; and that the defendant has since nailed down the gate in his dam, and prevented the plaintiffs from regulating the same, and thereby prevented them from flowing the Thomas meadow by means of the dam below, or for their uses, and obstructed the flow of the water, and prevented the entire beneficial use of Wood's factory.

The answers averred that, in 1851, the defendant dug away the soil in his meadow on both sides of the brook, so as to make a pond, and put a fish-grate at the inlet and outlet thereof, and put and had ever since raised trout in the pond; that in 1859 Wood applied to him for a lease in writing of the pond, for a certain number of years, saying that he was going to build a large factory, but the defendant refused to give the same, and orally agreed to let to Wood the use of the pond for such length of time as they could agree upon, but not for any definite time, and Wood accordingly used the pond more than ever before, and drew it down so low that it produced offensive smells, and threatened the entire destruction of the trout; and that the defendant had a right to his dam, grates and fish-pond.

The case came up for a hearing, upon the bill and supplemental bill, answers and evidence taken before a commissioner appointed for the purpose, before *Dewey*, J., who reported the same for the determination of the whole court.

In reference to the alleged license by the defendant, the plain-tiff Wood testified that, in April 1859, he asked the defendant if he would like to sell a right to use his meadow as a reservoir, or let it for twenty five years, and the defendant said he would rather not sell, or give a lease, but that Wood could go on and build his factory, and there would be no trouble; and that Wood could have the right of flowing for twenty five dollars a year.

*C. G. Davis*, for the plaintiffs, cited *Hall* v. *Chaffee*, 13 Verm. 150; *Carleton* v. *Redington*, 1 Fost. (N. H.) 291; *Weston* v. *Alden*, 8 Mass. 136; *Colburn* v. *Richards*, 13 Mass. 420; *Cook* v. *Hull*, 3 Pick. 269; *Anthony* v. *Lapham*, 5 Pick. 175; *Cary* v. *Daniels*, 8 Met. 466; *Bealey* v. *Shaw*, 6 East, 208.

*E. Ames*, for the defendant, cited *Hewlins* v. *Shippam*, 5 B. & C. 221; *Morse* v. *Copeland*, 2 Gray, 302; *Chandler* v. *Howland*, 7 Gray, 348; *Murdock* v. *Stickney*, 8 Cush. 116.

HOAR, J. The case stated in the plaintiffs' bill, and opened in argument upon the proofs, presents nothing but a reasonable use of the water by the defendant as a riparian proprietor, and therefore fails to show any wrong done to the plaintiffs, for which they are entitled to relief. We are of opinion that to retain the water by a dam for the purposes of a fish-pond, constantly maintained, and therefore allowing the natural flow of the water to pass unimpeded to the plaintiff's mill, is a just and reason-able exercise of the defendant's right to use the water as it passes through his land. In the absence of any grant, prescrip-tion or contract, the plaintiffs have no legal right to use the defendant's land as a reservoir, except so far as the erection of their mill-dam may necessarily cause the water to flow back upon it; and the right to cause it thus to flow cannot restrain the defendant from making a reasonable use of the water on his own land, provided he returns it all to its natural channel when it leaves his land, and allows it to flow thence regularly to the plaintiffs' land below.

The other ground on which the bill seeks for relief is equally untenable. The plaintiffs aver that, trusting to a license from the defendant to use and regulate the flow of water through

the defendant's land in the manner most serviceable to his mill, he has erected expensive buildings and machinery; and contends that equity will not now allow the license to be revoked to his prejudice. The only evidence of the license is the testimony of the plaintiffs themselves; and the defendant, in his answer under oath, expressly denies any license, except one which should terminate at his own pleasure. Without intending to decide that in any case equity would support a claim of this kind upon the unsupported testimony of one party against the denial of the other, we cannot here find proof of any such conduct of the defendant as should bar him from revoking the license. It appears, on the plaintiffs' own showing, that they applied for a lease or contract for the use of the water for a specific time, and were distinctly refused. 'This application and refusal distinguish the case from all those which have been cited in which a license, acted on by the other party, has been held in equity to be irrevocable. We think it put the plaintiffs on their guard, and that the whole arrangement amounted to a mere license during the defendant's pleasure, with sufficient notice to them that no other would be granted. If, under such circumstances, they incurred expenses the value of which to them would depend upon the continuance of the license, they acted at their own risk. *Bill dismissed with costs.*